## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARGERY BURFIELD,

    Plaintiff,

vs.                                                       CIV 00-990 KBM/DJS – ACE
*Consolidated With*
CIV 01-199 KBM/DJS – ACE

BRUCE BABBITT, Secretary of the
UNITED STATES DEPARTMENT
OF THE INTERIOR,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

In these consolidated cases the parties consented to have me serve as the presiding judge and enter final judgment. 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b). I previously granted summary judgment in favor of Defendant on Plaintiff's discrimination claims under Title VII and the Age Discrimination in Employment Act. The matter is now before me on the only remaining claim – Plaintiff's appeal of the decision by Administrative Judge ("AJ") Jack E. Salyer, who found that the decision to terminate her employment was appropriate. The AJ's decision constitutes the final action for purposes of review of a decision of the Merit Systems Protection Board ("MSPB"). *See Doc. 41,* Exh. ("*AJ Opinion*").[1]

Having carefully reviewed the entire administrative record, the parties' arguments, and the relevant law, I affirm the decision of the AJ. Because this disposition concludes all of matters before me in both cases, I will enter judgment as well and dismiss the action.

---

[1] The parties did not submit anything for my consideration following a telephone conference regarding jurisdiction over this administrative appeal. Thus, I assume that the appeal was timely filed or find that the untimeliness defense raised in the Answer has been waived or abandoned.

## I. General Background

The evidence introduced at the hearing before the AJ was in some respects less detailed than the evidence before me on summary judgment. As such, I do not incorporate my prior findings by reference. On the other hand, the general background facts are consistent in the following respects.

Plaintiff was a federal employee for many years and received good evaluations. In 1994, William Radke, Manager of the Bitter Lake National Wildlife Refuge, hired her as an office assistant when she was 55 years old. Radke gave Plaintiff favorable evaluations and/or performance awards in 1994, 1995, and 1996. In late 1996, however, he perceived a change in Plaintiff's performance and in November 1997, he gave her a negative performance evaluation.

On February 26, 1998, Plaintiff and Radke were involved in an incident where she tore up a document from her files that Radke considered to be evidence. Later that day, Plaintiff met with Radke's supervisor, Renne Lohoefener, who changed Burfield's negative evaluation on the basis that Radke had not complied with the steps and documentation required to issue such an evaluation. Although Lohoefener changed the negative performance rating, he placed Plaintiff on an informal and a subsequent formal performance improvement program. When those programs were reviewed, Plaintiff's performance was found to not meet the required elements. Lohoefener subsequently recommended, and his supervisor carried out, Plaintiff's removal from employment.

The AJ held two hearings where, among others, Plaintiff and Radke testified. The bulk of the testimony concerned the critical elements of Plaintiff's job, as defined in the performance improvement plan, and how Plaintiff's performance failed to meet those standards.

The AJ reached three conclusions in upholding Plaintiff's removal. He reviewed in detail

the evidence of the standards and Plaintiff's performance and first found that the agency established Plaintiff's performance was unacceptable by a preponderance of the evidence. In this context he also reviewed in detail Plaintiff's explanations why her performance was unacceptable, some of which he rejected as not credible and all of which he rejected as "excuses rather than bonafide reasons for unacceptable performance." *AJ Opinion* at 12. The AJ next found that Plaintiff failed to establish she was discriminated against on the basis of her age or in retaliation for engaging in protective activities. Finally, he determined that Plaintiff's removal was appropriate under the circumstances.

## II. Standard of Review

The parties agree that standard of review for an appeal of an MSPB decision is extremely narrow and that the AJ's credibility determinations are binding absent exceptional circumstances. *See Doc. 41* at 1, 6, 7; *Doc. 44* at 1-2, 4-5. As the Tenth Circuit holds:

> A MSPB decision must be upheld unless the reviewing court determines that it is:
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
> (3) unsupported by substantial evidence.
> 5 U.S.C. § 7703(c). The reviewing court "may not substitute its judgment for that of the MSPB." *Wilder v. Prokop,* 846 F.2d 613, 619 (10th Cir. 1988). "Under the arbitrary and capricious standard the MSPB's decision needs only to have a rational basis in law." *Id.* at 620.

*Williams v. Rice,* 983 F.2d 177, 180 (10th Cir. 1993).[2] Plaintiff contends that the AJ's decision

---

[2] *See also WXGI, Inc. v. N.L.R.B.,* 243 F.3d 833, 842 (4th Cir. 2001) ("Exceptional circumstances include those instances when a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.") (internal quotations and citations omitted); *Thunderbird Propellers, Inc. v. F.A.A.,* 191 F.3d 1290, 1297 (10th Cir. 1999) ("The

3

fails on all three grounds, although her principal complaint is that the AJ was biased against her.

### III. Analysis

#### A. *Bias Claim*

When the AJ questioned Plaintiff during the first hearing, he asked Plaintiff if she was

> absolutely certain that because of advancing age, your performance skills and abilities have simply not declined, and that's what we're looking at here today? I mean, that happens when people age, I mean, that's a fact of, the aging process is a fact of life, but taking action against employees whose performance has actually slipped because of their age is not age discrimination as I understand it. Are you sure that isn't what's happened here.

*Official Transcript* at 174. During the second hearing, Plaintiff requested that the AJ disqualify himself based on that comment. *Id.* at 194-199. The AJ declined, finding the question "highly appropriate under the circumstances," *id.* at 199, and later reiterated his belief that the disqualification request was without merit and that the question was "highly relevant to her claim of age discrimination." *Id.* at 384.

The AJ further explained that his question was not intended to suggest that Plaintiff could not do her job because of her age. Rather, the AJ said

> we know that things can set in at a very early ages that affect physical and mental ability to perform. That's all I was getting at. I meant nothing personal to you and if you took it that way then I sincerely apologize for it. I still think those were appropriate questions and I want to apologize if you took them the wrong way.

*Id.* at 385.

---

ALJ considered this testimony and rejected it when he found in favor of the FAA. . . . We cannot reweigh the evidence or reevaluate the ALJ's credibility determination."); *Hambsch v. Dep't of the Treasury,* 796 F.2d 430, 436 (Fed. Cir. 1986) ("To the extent that the petitioner's claim is based upon a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable.").

Plaintiff insists, however, that the AJ's age question in the first hearing demonstrates prejudice and represents direct evidence of his own or his agency's policy of age discrimination. Defendant responds that the claim of bias was waived because Plaintiff failed to request certification of the recusal issue to the Board as required under applicable regulations. Indeed, it appears from the transcript that counsel and Plaintiff considered the matter settled during the hearing. *Id.* at 385-87. Furthermore, Plaintiff's reply ignores the waiver argument. Therefore, I reject the bias claim as a basis for reversing the AJ's decision.

Even if the issue is not waived, I find that the AJ's age question does not "'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Bieber v. Department of Army,* ___ F.3d ___, 2002 WL 826915 (Fed. Cir. 2002) (quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994)). In fact, the Federal Circuit in *Bieber* found even more egregious comments did not warrant a new hearing.[3] Thus, I find this ground for reversing the administrative decision is also without merit.

### B. Fabrication Finding & Plaintiff's Credibility

Plaintiff accused Radke of grabbing her arm and restraining her during the incident on the morning of February 26, 1998 that was discussed above. However, the AJ did not believe this allegation. *AJ Opinion* at 4-6. Rather, he credited Radke's contention that he "never touched or restrained the appellant in any way." *Id.* at 5.

---

[3] *Id.* (in action where employee was removed stemming from his continued inquiry about appropriate dress code during hearing "the administrative judge denigrated Bieber's concerns . . . stating that 'I really think what people wear to work is no concern of their fellow employees,' . .. and asking '[b]ut why . . . didn't Mr. Bieber just shut up?' . . . repeatedly stated that he could not understand why Beiber 'continued to be obsessed with [the dress code issue' and] . . . went so far as to state that Beiber's frequent berating of his coworkers regarding their clothing 'defies civility to me.'").

Plaintiff does not take issue with the AJ's decision to credit Radke's testimony over hers. *See Doc. 41* at 7 ("Again, the error of the MSPB is <u>not</u> refusing to accept Plaintiff's version of the incident of February 26, 1998.") (emphasis original). She does not ask that I "redetermine whose account of the [arm grab incident] is most credible." *Id.* at 6. Instead, Plaintiff takes issue with the portion of the opinion where the AJ characterized her testimony about the "assault" as a "fabrication." *Id.* at 6-7.

In a detailed discussion, the AJ explained why he discredited Plaintiff's version: (1) she never reporting the assault to law enforcement and only raised the claim in a discrimination complaint; (2) he believed Lohoefener, who testified Plaintiff met with him in the afternoon of the incident but did not report at that time that she had been assaulted; (3) Lohoefener, the one who recommended Plaintiff's removal, was unaware of the assault allegation until the second hearing before the AJ; and (4) Plaintiff did not raise her claim of assault during the administrative "appellate" process until the second hearing before the AJ.[4] *AJ Opinion* at 4-6. After detailing the reasons why he discredited Plaintiff's version of the incident, the AJ summarized his credibility finding:

> I find it most improbable that the appellant was touched/assaulted by Radke on February 26, 1998. I find it far more probable that appellant fabricated the claim in an attempt to malign Radke's character and to prejudice the undersigned and other reviewing authorities. [*Hillen v. Department of the Army,* 35 M.S.P.R. 453, 461 (1987)]. I further find that appellant's lack of credibility with regard to this serious matter will adversely affect the credibility of much of the rest of her testimony, *infra. See Pedersen v. Department of Transportation,* 9 M.S.P.R. 195, 198 (1981).

---

[4] As it turns out, Plaintiff did testify about the arm grab incident in the first hearing before the AJ, so in fact his third reason is mistaken. *See Official Transcript* at 153.

*AJ Opinion,* at 6.

Plaintiff first contends there is no evidence in the administrative record to support the conclusion she fabricated the claim. I disagree. Plaintiff asserted that Radke grabbed her arm three times during the encounter while Radke flatly denied that he had touched her at all during the incident. This is not a case where the parties disagreed on how to characterize a physical contact – a mere touch versus a grab. Rather, these diametrically opposed versions require a determination of whether or not there was any physical contact. Unlike some scenarios in which two divergent accounts can be logically reconciled, the AJ had to determine who was telling the truth. By crediting Radke's version that he never grabbed Plaintiff's arm, the AJ necessarily concluded by inference that Plaintiff had "invented" the allegation of physical contact.

Even if I assumed that there was no support in the record for the AJ's conclusion about Plaintiff's motives or his finding that the fabrication should "severely damage" Plaintiff's "overall credibility," *see id.* at 4, Plaintiff's arguments still fail. Plaintiff argues that

> but for the exclusion of Plaintiff's testimony as a penalty for her charge against Radke, the Administrative Judge could have overruled Plaintiff's termination of employment on substantive grounds. It is clear from the Administrative Judge's own statements that the claim against Radke, ***and not Plaintiff's job performance,*** was the deciding factor in the Administrative Judge's decision.

*Doc. 41* at 8 (emphasis added). I disagree. For the reasons discussed in the next section, I find that the AJ's decision affirming Plaintiff's removal was undertaken after a consideration of all of the evidence in the record. I further find that the decision is supported by substantial evidence and is neither arbitrary nor capricious.

## C. Reasons For Poor Performance

On the subject of Plaintiff's performance during the performance improvement period, the AJ found the agency proved unacceptable performance by a preponderance of the evidence. The opinion details the standards in the five areas of Plaintiff's job defined as critical and some of the documented instances where Plaintiff failed to perform as required. The AJ did not discuss all of the instances Radke testified about because Plaintiff "largely undisputed" her unacceptable performance. *AJ Opinion* at 10. Rather, her testimony consisted of explaining why it was "impossible for her to perform acceptably" and reasons why she suspected Radke "discriminated against her because of her age." *Id.* at 11.

Again, Plaintiff posits that because the AJ discredited Plaintiff's assault charge, he also "excluded" all of her other testimony about her work performance from his consideration as to whether the agency was justified in removing her for unacceptable performance. *See Doc. 41* at 8; *Doc. 47* at 2-3. The first problem with this argument is that it ignores the AJ's findings, supported by the record, that specific instances of failure to meet performance goals under the improvement program were acknowledged by Plaintiff.

The second problem with Plaintiff's argument is that the AJ's opinion, in context, indicates the contrary conclusion. For example, as Plaintiff notes, the AJ stated that he did consider Plaintiff's testimony and found that "there is a grain of truth to many of the appellant's specific claims, especially that her workload did increase in the 1997-98 timeframe." *AJ Opinion* at 12. Nevertheless, the AJ also found that

> her overall claim lacks credibility for the following reasons. First, I find that the appellant's lack of credibility with regard to her claim that Radke assaulted her . . . adversely affects her claim that she

8

> was overburdened during the PIP and thus could not improve her
> performance to the satisfactory level. *See Pedersen,* 9 M.S.P.R at
> 198.
>
> * * * * *
>
> I also find that the credibility of the appellant's testimony is
> damaged by her bizarre, wholly uncorroborated claim that Radke
> actually sabotaged her work by giving her conflicting, contradictory
> instructions and by changing information on documents. I find this
> claim is inconsistent with the evidence of record, including the
> appellant's candid testimonial admission, that Radke assisted her in
> may ways in improving her performance during the PIP. I also find
> it facially improbable that Radke would have sabotaged the
> appellant's work in any fashion. *See Hillen,* 35 M.S.P.R. at 460-
> 61. Finally, I find that the appellant's explanations for her
> concededly unacceptable performance during the PIP are largely
> subjective, and overwhelmingly uncorroborated, excuses rather
> than bona fide reasons for unacceptable performance.

*AJ Opinion,* at 12; *see also Doc. 41* at 8.

It is apparent that the AJ considered Plaintiff's testimony about her work performance and gave it the credit he thought due. He did not wholly exclude or discount the testimony solely on the basis of her claim of assault. Furthermore, he found that Plaintiff tended to downplay her performance shortcomings and offered only excuses for her failings rather than legitimate justifications why performance goals could not be accomplished. Accordingly, I find these arguments are not grounds upon which to reverse the AJ's decision.

### D. Past Work Record

Plaintiff's final argument is that AJ did not follow the correct procedures (that is, apply the *"Douglas"* factors), because he failed to adequately consider her past work record and lack of disciplinary infractions as mitigating factors in arriving at the conclusion that removal was justified. *See Doc. 41* at 10-11. The AJ's reasons, in context, belie this assertion:

9

[the] appellant was given clear notice that her performance was considered to be unacceptable in several critical elements of her position. The appellant was then provided a 90-day informal opportunity to improve her performance. When the appellant's performance during the informal 90-day period did not rise to the acceptable level, she was place on a formal 90-day PIP. During the PIP, as set out above, the appellant's immediate supervisor, Radke, assisted her in improving her performance in a variety of ways. Radke met with the appellant on a frequent basis, albeit unsuccessfully to discuss her performance deficiencies. In addition, the appellant was explicitly informed, both verbally and in writing, of what level her performance would have to reach in order for her to be retained in employment. Nonetheless, during the PIP, the appellant's performance did not approve [sic] but remained unacceptable. Accordingly, I find that the appellant was provided a genuine opportunity to improve her performance before being removed.

Furthermore, the appellant's unacceptable performance during the PIP covered four of the five critical elements of her position, thus effectively running the breadth of the position. Put another way, the appellant's PIP performance was consistently unacceptable in nearly all of the areas of her position.

Moreover, based on the negative attitude of the appellant that is widely reflected throughout the appeal file, especially her poor attitude toward her immediate supervisor, who, the record reveals, genuinely tried in many ways to assist her in improving her performance, and her reliance on a myriad of excuses for her unacceptable performance rather than on bona fide reasons, I find that she is not a likely candidate for rehabilitation. I further find that the appellant's demonstrably poor attitude toward Radke during the PIP undoubtedly contributed to her failure to improve her performance to the satisfactory level.

*I do find that there are several mitigating factors present here. The appellant had nearly 20 years of Federal service. Because there is no evidence of record as to the quality of appellant's service, I will assume that his [sic] performance was consistently acceptable or better. It is also undisputed that the appellant had no past disciplinary record.*

*Nonetheless, despite the foregoing mitigating factors, I find the penalty of removal to have been appropriate.*

*AJ Opinion,* at 17-18 (emphasis added).

Thus, the decision establishes that the AJ considered and weighed the type of factors required in arriving at his conclusion. By my count he specifically discussed six of the twelve "*Douglas*" factors quoted in Plaintiff's brief. *See Doc. 41* at 10 (1– nature/seriousness of offense and relation to employee's duties and responsibilities; 3– past disciplinary record; 4– past work record; 5– effect of offense on ability to perform at satisfactory level and effect on supervisory confidence; 9–clarity with which employee was on notice of any rules that were violated in committing the offense; 10– potential for employee's rehabilitation; 11– mitigating circumstances). In addition, Lohoefener and the person who made the final decision to remove Plaintiff were specifically questioned about alternatives to removal. *See Official Transcript* at 292, 305-17.

Plaintiff finally argues in this regard that the AJ's bias against Plaintiff (based on the age question) and determination to exclude her testimony about her work performance (based on the fabrication characterization) precluded him from making a thoughtful analysis of the *Douglas* factors. For all the reasons above, I find this argument unavailing.

Wherefore,

**IT IS HEREBY ORDERED** that the decision of the MSPB is **AFFIRMED**. A separate judgment pursuant to Rule 58 dismissing this action shall enter concurrently herewith.

_____
Karen Ballard Molzen
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.